**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN , JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**February 20, 2013**

# In the Court of Appeals of Georgia

A12A2355. FOSTER v. THE STATE.

MCFADDEN, Judge.

After a jury trial, Larry Foster was convicted of felony theft by shoplifting, see OCGA § 16-8-14 (b) (1) (C), and sentenced as a recidivist. The trial court denied his motion for new trial. Foster challenges his treatment as a recidivist, but the trial court did not err in considering, for purposes of sentencing, his conviction on a prior offense to which he had pled guilty. He also challenges the effectiveness of his trial counsel, but he has not shown that he was prejudiced by deficiencies in his counsel's performance. Accordingly, we affirm.

1. *Facts.*

Viewed in the light most favorable to the verdict, the evidence showed that on November 9, 2006, Foster entered a Dollar General store carrying a bag, placed items

inside his jacket and left the store without paying for those items. A store employee witnessed Foster take the items and called the police. Shortly thereafter, law enforcement officers apprehended Foster near the store. They found Foster's bag, containing the stolen merchandise, nearby. Similar transaction witnesses testified to other occasions where Foster had entered stores, placed merchandise inside his jacket, left without paying for the items, and then stashed the items in a bag.

2. *Recidivist sentence*.

The trial court sentenced Foster as a recidivist under OCGA § 17-10-7 (c), after the state presented evidence of three prior felony convictions. Foster objected to the admission of one of the prior convictions on the ground that it stemmed from a constitutionally invalid guilty plea.

To support a recidivist sentence, a guilty plea must be valid under *Boykin v. Alabama*, 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969) . See *State v. Cooper*, 281 Ga. 63 (1) (636 SE2d 493) (2006). The United States Supreme Court held in *Boykin* that "[s]everal federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial." 395 U. S. at 243. These rights are the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers. *Beckworth v. State*, 281 Ga. 41, 42 (635

2

SE2d 769) (2006). The record must show that a defendant entering a guilty plea was specifically advised of the three *Boykin* rights. See *Childs v. State*, 311 Ga. App. 891, 891-892 (1) (717 SE2d 509) (2011).

(a) Foster claims that he was not specifically advised of one of the *Boykin* rights – the right to a jury trial – during the plea proceeding on the prior offense. The record of the plea proceeding in the prior case belies Foster's claim that he was not adequately advised of this right.

During the plea colloquy, the court first mentioned Foster's right to jury trial while informing him that he could withdraw his guilty plea after sentencing: "[I]f when we're through here I announce a sentence which is more severe than what you bargain for then the law gives you the right if you want to at that time to withdraw your plea of guilty, or your tender of a plea of guilty and go to trial before a jury[.]" Later in the colloquy, Foster indicated that he understood that at any point during the plea proceeding he could change his plea and "[h]ave a trial." The transcript also shows that the prosecutor referred to the right to a jury trial while informing Foster about rights inherent in a jury trial that he would waive by pleading guilty. The prosecutor identified those rights as the right to confront his accuser, the right to cross examine the state's witnesses, the right to subpoena witnesses, and the right either to

3

testify in his own behalf or to remain silent, and he stated that a guilty plea "means that you will not have a jury trial, and there are certain rights that you can only use if you do have a jury trial and we want to make sure you understand what you're going to be giving up." Foster indicated that he understood this. The prosecutor then asked Foster if he wanted to "waive those rights, give up those rights that you would have if you had a jury trial, and go ahead with your plea of guilty here." Foster replied "[y]es."

Foster argues that the information given him in the plea colloquy was insufficient because the phrase "right to a jury trial" was not used, except in the limited context of withdrawing his plea after sentencing, and he analogizes this case to *Wilson v. Kemp*, 288 Ga. 779, 779-780 (727 SE2d 90) (2011), in which our Supreme Court held that the trial court's discussion of a defendant's "right to remain silent" was specifically limited to the plea hearing itself, rather than at trial, and did not comply with the *Boykin* requirements. But "[n]othing in *Boykin* requires the use of any precisely-defined language or 'magic words' during a guilty plea proceeding." (Citation omitted.) *Brown v. State*, 290 Ga. 50, 52 (2) (718 SE2d 1) (2011).

> [A]s long as the trial court, in explaining the three constitutional rights
> an accused must waive in order to enter a valid guilty plea, makes sure

4

the accused has a full understanding of the concepts involved, the appellate courts will not invalidate a guilty plea for failure to use the precise language of those three rights as set forth in *Boykin*[.]

(Citations and punctuation omitted.) *Hawes v. State*, 281 Ga. 822, 824 (642 SE2d 92) (2007). The court in *Wilson* noted that "the record in th[e] case fail[ed] to show that *any* comment by the trial court, or by [the defendant's] counsel, informed him that by pleading guilty he would waive his privilege against compulsory self-incrimination." (Citation and punctuation omitted; emphasis supplied.) *Wilson*, 288 Ga. at 780. Here, in contrast, the statements by the court and prosecutor during the plea colloquy, taken as a whole, conveyed the core principle that if Foster did not enter a plea he could have a jury trial. See *Rogers v. State*, 286 Ga. 55, 56 (685 SE2d 281) (2009) (underlying purpose of *Boykin* – to ensure defendant's receipt of adequate information about his rights so that he can make an intelligent and voluntary decision about pleading guilty – is met if language used during plea proceeding adequately conveyed to him the core principles of the *Boykin* rights); *Hawes*, 281 Ga. at 824 ("[T]he focus, upon review, is whether the record shows that the trial court explained or referred to the right in a manner reasonably intelligible to that defendant. To hold otherwise would be to elevate formalistic litany of constitutional rights over the

5

substance of the dialogue between the trial court and the accused.") (citation omitted). See also *Campos v. State*, __ Ga. __ (__ SE2d __) (Case No. S12A1639, decided Nov. 19, 2012) (identifying, as an instance in which the plea court "explicitly informed [the defendant] of his right to trial by jury," the court's statement "that a trial had been scheduled for his case, and if he wished, his 'case would be tried before a jury'").

Because the transcript of the plea proceeding in the earlier case reflects that Foster was sufficiently informed of his right to a jury trial, the trial court in this case was authorized to consider evidence of that prior conviction over Foster's objection in sentencing.

(b) Foster also claims that he was not informed of his right to counsel or to the presumption of innocence during the plea proceeding, but he was represented by counsel and has cited no authority supporting his position that a guilty plea is invalid if matters other than the *Boykin* rights are not specifically explained. See generally *Britt v. Smith*, 274 Ga. 611, 614 (556 SE2d 435) (2001) ("decisions [of the Georgia Supreme Court] dealing with the validity of a guilty plea are generally couched in terms of the defendant's waiver of the three *Boykin* rights") (citation omitted).

3. *Ineffective assistance of counsel.*

Foster argues that his trial counsel rendered ineffective assistance during both the plea bargain process and at trial.

> To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), the defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.

(Citation and punctuation omitted.) *Arnold v. State*, 315 Ga. App. 831, 832 (728 SE2d 342) (2012). On appeal, we "accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, but . . . independently apply the legal principles to the facts." (Citation omitted.) *Johnson v. State*, 290 Ga. 382, 383 (2) (721 SE2d 851) (2012). As detailed below, Foster has not shown that his trial counsel performed deficiently during the plea bargaining process, or that counsel's cross-examination of an eyewitness at trial was deficient, and he has not shown that he was prejudiced by counsel's decision not to call rebuttal witnesses at trial.

(a) *Counsel's effectiveness during plea bargaining.*

Foster argues that his trial counsel was deficient in failing to adequately advise him about the state's plea offer or the implications of being sentenced as a recidivist.

"In the context of the plea bargain process, a defendant may prove that trial counsel was ineffective by showing that counsel failed to inform him that an offer to plead guilty had been made and failed to advise him of the consequences of the choices confronting him." (Citation and punctuation omitted.) *Arnold*, 315 Ga. App. at 832.

At the hearing on his motion for new trial, Foster testified that trial counsel informed him that the state was willing to make a plea offer that involved incarceration. Foster testified that he told his counsel he would not accept an offer that involved confinement, but also that he and trial counsel agreed to defer a decision on the offer until after they had a chance to meet to review the case. Foster testified that they never met to review the case. He further testified that trial counsel never explained to him the implications of a recidivist sentence. Finally, he testified that, had he understood those implications, he would have accepted the state's plea offer.

Trial counsel's hearing testimony conflicted with Foster's testimony in several pertinent respects. Counsel testified that he conveyed to Foster the state's plea offer but that Foster immediately rejected the offer and refused to hear any details regarding it because it involved confinement. Counsel also testified that he met with Foster two or three times to discuss the facts of the case. And he testified that, after

8

the state served notice of its intent to seek recidivist punishment, he explained the implications of that punishment to Foster.

It was for the trial court to determine the credibility of Foster and his trial counsel to resolve the factual dispute about the advice trial counsel gave Foster on the choices confronting him. See *Johnson*, 290 Ga. at 384 (2) (a); *Arnold*, 315 Ga. App. at 832-833. The hearing evidence authorized the trial court to find that trial counsel did not perform deficiently in connection with the plea bargain process.

(b) *Counsel's effectiveness at trial.*

Foster argues that the testimony of an eyewitness who saw him take the merchandise from the store conflicted with information in the police report on the incident. He argues that his trial counsel was ineffective in failing either to cross examine this witness on the inconsistencies or to call as rebuttal witnesses the police officer who wrote the report or a store manager who also witnessed the incident. We disagree.

At the hearing on the motion for new trial, trial counsel testified – and Foster's post-conviction counsel conceded – that some of the alleged inconsistencies between the eyewitness's testimony and the police report were not material. For that reason, and because the eyewitness did not write the police report, trial counsel testified that

he believed he would not gain much from trying to impeach the eyewitness on these points. He also testified that he felt he could cast doubt on the witness's memory during closing argument and did not want to "give the [s]tate the chance to rehabilitate the witness." Finally, trial counsel testified that he believed it would be more effective to question the police officer who wrote the report, whom he thought the state would call because the officer was the person who arrested Foster and was on the state's witness list. When trial counsel realized during trial that the state was not going to call this witness, it was too late for him to begin the subpoena process.

Given this evidence, Foster has not shown that his trial counsel performed deficiently in cross examining the eyewitness. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Lawrence v. State*, 274 Ga. 794, 795 (3) (560 SE2d 17) (2002). Furthermore, "[t]he scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel." (Citation omitted.) *Simpson v. State*, 277 Ga. 356, 359 (4) (b) (589 SE2d 90) (2003). See also *Payne v. State,* 289 Ga. 691, 697 (3) (b) (715 SE2d 104) (2011) ("Decisions about what questions to ask on cross-examination are quintessential trial strategy.") (citation omitted). Trial counsel

offered a reasonable explanation for his decision not to cross examine the witness on the contents of the police report.

In addition, even if we assume arguendo that trial counsel should have called as rebuttal witnesses either the police officer who wrote the report (rather than depending upon the state to do so) or the store manager to provide additional testimony about what occurred in the store, Foster "has failed to demonstrate how counsel's failure to call [the rebuttal] witness[es] . . . would have affected the outcome of his case." *Dunn v. State*, 291 Ga. 551, 554 (4) (d) (732 SE2d 524) (2012). He did not present any evidence at the motion for new trial hearing regarding what either the officer or the store manager would have said, had those witnesses testified at trial. "Without a proffer of evidence that would have been admissible and favorable to his case, [Foster] has failed to demonstrate a reasonable probability that the testimony of these witnesses would have affected the outcome at trial." *Thomas v. State*, 282 Ga. 894, 896 (2) (a) (655 SE2d 599) (2008).

*Judgment affirmed. Barnes, P. J., and McMillian, J., concur.*