**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 25, 2023**

# In the Court of Appeals of Georgia

A23A1174. MCCALLUM v. THE STATE

PIPKIN, Judge.

Appellant Najya Briann McCallum appeals the denial of her motion to withdraw guilty plea. For the reasons that follow, we affirm.

In January 2021, Appellant was indicted on charges stemming from two different incidents involving the same victim; Appellant was charged with making a terroristic threat towards the victim in February 2020 and with aggravated assault for striking the victim with her car in May 2020. Moments before her jury trial began, Appellant announced that she had decided to enter a plea of guilty to both offenses. At the request of the trial court, the State offered a factual basis for each charge. As to the first charge, making a terroristic threat, the State provided the Court with the following details:

The victim . . . and this particular defendant . . . were involved in an incident at the Bubbles Laundromat, here in Augusta. During that particular incident, it's kind of unclear what the argument started about, but there was an argument between this defendant and [the] victim in that case in which the defendant -- and there was corroborating witnesses -- at one point said, "I'll blow your effing head off," I believe was essentially . . . what the threat was. The altercation ends up in the parking lot and . . . [o]fficers arrive. . . . As soon as [they] arrived, [Appellant] strikes [the victim] in the face. She is then arrested -- maybe taken into custody for a brief time and she was only cited for a disorderly conduct. So the basis of the terroristic threats happened in 2020, at the laundromat.

With respect to the second charge, aggravated assault, the State proffered the

following factual basis:

The actual aggravated assault in this case happened on May 19th -- so a few months later -- 2020. This was around 4:38 p.m. Law enforcement received a call and were dispatched to the Texaco gas station. That was at 4150 Windsor Spring Road. The victim . . . reported that she and the defendant were inside the gas station. She tells law enforcement about their past involvement. As far as I can tell, that was their only past involvement - the laundromat incident. While in the gas station, the two exchange words. The whole incident is actually on video and it's about 50 seconds. . . . But you can see in the video and you can see on the screen right there that [Appellant] is at the bottom checking out. [The victim] walks in. [Appellant] begins to leave[,] and the two exchange words. [The victim] follows her out into the parking lot. They continue to exchange words. [Appellant] goes to her car, gets in her car, and you see in the video [that the victim] almost turns or does turn to go back into the store. The incident was pretty much over. It's at that point that [the victim] realizes that [Appellant's] car is coming at her and it strikes her with -- I can't say with any amount of certainty what kind of speed,

2

but she hit her hard and she hit her fast, to the point where she went all the way across the parking lot.

During the subsequent plea colloquy, the trial court learned the that Appellant had attended some college, was employed at the time of the plea, was not suffering from any diagnosed mental or psychological illness, was not under the influence of drugs or alcohol, and that Appellant's desire to plead guilty was not the result of any threat or promise. The trial court also confirmed that Appellant had completed the "Plea of Guilty Acknowledgment and Waiver of Rights" form with her attorney. After being asked if she desired to plead guilty, Appellant equivocated, telling the trial court "I'm guilty for hitting her with my vehicle[, but] I never threatened her." The trial court accepted Appellant's plea to aggravated assault, but announced the commencement of trial on the terroristic threat count.

During a subsequent break in the proceedings, Appellant announced her intention to enter an *Alford*[1] plea to the terroristic threat count. After her announcement, the trial court again engaged Appellant; Appellant acknowledged that, despite maintaining her innocence, there was a possibility that a jury could find her guilty of the terroristic threat charge and that she wanted to plead guilty. The trial

---

[1] *North Carolina v. Alford*, 400 U. S. 25 (91 SCt 160, 27 LE2d 162) (1970).

court then advised Appellant that she was waiving her right to be tried by jury, that the State would not present witnesses, that those witnesses would not be cross-examined by Appellant's attorneys, that Appellant would not be able to present witnesses to support her defense, that she would not testify before the jury or have the jury instructed that her failure to testify could not be used against her, and that, ultimately, she was giving up her "right to go to trial so that [she] can resolve this with a plea."

After ascertaining that Appellant was satisfied with the services of trial counsel, the trial court accepted Appellant's plea to both offenses, heard from the victim and the defense, and sentenced Appellant.[2] The plea transcript reflects that, after sentencing, Appellant voiced her concern that she would not get a jury trial, telling the trial court, "I want[ed] to plead guilty, but I want the jury to observe and let me know if I'm truly guilty." The trial court reminded Appellant that she had just repeatedly affirmed her intention to plead guilty and forego a jury trial; the hearing then concluded.

---

[2] The trial court entered a written order finding, among other things, that Appellant's plea was knowing and voluntary and that it was supported by a sufficient factual basis.

4

Two days later, Appellant moved to withdraw her guilty plea; she asserted that the plea was not knowingly and voluntarily made, that her plea was not supported by a factual basis, and that her plea was a manifest injustice. In a subsequent hearing on the motion, Appellant's trial counsel testified that she met or spoke with Appellant on numerous occasions, went through discovery with Appellant, and had prepared for trial. Counsel testified that, after Appellant indicated that she wanted to plead guilty rather than have a trial, counsel explained to Appellant the consequences of pleading guilty and went through the 35-question plea form with Appellant.

As to the terroristic threat count, counsel discussed an *Alford* plea with Appellant during a break in the proceedings, and Appellant believed that such an option was "more appropriate." When asked about Appellant's assertion after sentencing that she wanted to plead guilty yet still have a jury trial, counsel explained that Appellant "had previously asked about that, which, at that point, I had told her that's not the case." On cross-examination, trial counsel expressly testified that Appellant seemed to understand the plea process and the rights she was waiving; counsel's opinion was that Appellant "understood what was going on that day . . . [t]hat she was, in fact, entering a guilty plea and not having a trial." The trial court denied Appellant's motion, and Appellant now seeks review of that decision.

1. Appellant first claims that the trial court erred in accepting her *Alford* plea to the terroristic threat charge.

As we have explained before,

> [u]nder *North Carolina v. Alford*, the trial court may accept a guilty plea from a defendant who claims innocence if the defendant has intelligently concluded that it is in his best interest to plead guilty and the court has inquired into the factual basis for the plea and sought to resolve the conflict between the plea and the claim of innocence.

(Footnote omitted.) *Skinner v. State*, 297 Ga. App. 828, 831 (2) (678 SE2d 526) (2009). "[T]he voluntariness and intelligence of an *Alford* plea is judged by the same standard as a routine guilty plea: whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." (Punctuation and footnote omitted.) *Rios v. State*, 358 Ga. App. 359, 360 (855 SE2d 372) (2021). Thus,

> [i]f the defendant later challenges the validity of his guilty plea, the state may meet its burden of demonstrating that the plea was intelligently and voluntarily entered by (1) showing on the record of the plea hearing that the defendant was aware of the rights he was waiving and the possible consequences of his plea; or (2) pointing to extrinsic evidence affirmatively showing that the guilty plea was knowingly and voluntarily entered.

(Citations omitted.) *McKiernan v. State*, 288 Ga. 140, 142 (2) (702 SE2d 170) (2010). We review the trial court's denial of Appellant's motion to withdraw guilty plea for

6

abuse of discretion. See *Berrien v. State*, 300 Ga. 489, 493 (3) (796 SE2d 718) (2017).

Here, the record shows that trial counsel discussed the case with Appellant numerous times before the plea, that it was Appellant who expressed a last-minute interest in pleading guilty, and that counsel advised Appellant of her rights and the consequences of her plea. The record also shows that that Appellant completed an entire form concerning her rights, that counsel specifically discussed an *Alford* plea with Appellant, that Appellant was amenable to entering an *Alford* plea, and that the trial court engaged in a lengthy and detailed plea colloquy with Appellant about her decision. Thus, the record supports the trial court's ultimate conclusion that Appellant understood both her rights and the consequences of her plea.

Appellant contends, however, that the evidence was not "strong" as to the terroristic threat count and, thus, that an *Alford* plea was improper here. However, during its factual basis, the State recounted the language of the statement made by Appellant to the victim -- which threatened murder -- and asserted that there were

7

witnesses to corroborate Appellant's statement.[3] While Appellant complains that the State failed to "name [or] provide any description or details concerning such witnesses," Appellant cites no authority to support her position that such details were necessary, and we fail to see how providing this information would strengthen the State's case given the nature of the proceedings. Moreover, we have previously held that any doubts as to the sufficiency of the corroborating evidence does not bar an *Alford* plea to the offense of terroristic threat. See *Henry v. State*, 284 Ga. App. 439, 439-440 (1) (644 SE2d 191) (2007).[4]

2. Appellant also asserts that, in violation of *Boykin v. Alabama*, 395 U. S. 238 (89 SCt 1709, 23 LE2d 274) (1969), she was not properly informed by the trial court that her guilty plea waived her right to confront her accusers. More specifically, Appellant complains that the trial court did not, in exact language, advise her that "she was waiving 'the right to confront her accusers.'" However, "informing a

---

[3] "A person commits the offense of a terroristic threat when he or she threatens to . . . [c]ommit any crime of violence." OCGA § 16-11-37 (b) (1) (A). However, "[n]o person shall be convicted [of such offense] on the uncorroborated testimony of the party to whom the threat is communicated." Id. at (b) (3).

[4] We also note that, contrary to her arguments on appeal, a trial court may properly accept an *Alford* plea even where a defendant does not acknowledge that the State's evidence would be legally sufficient to support a conviction. See, e.g., *McGuyton v. State*, 298 Ga. 351, 353 (1) (a) (782 SE2d 21) (2016).

8

defendant of [her] rights during a guilty plea proceeding does not require any particular language or 'magic words.'" (Citation omitted.) *Phelps v. State*, 293 Ga. 873, 876 (2) (a) (750 SE2d 340) (2013). Indeed, appellate courts of this State will not overturn a guilty plea for failure to use the precise language set out in *Boykin* so long as the trial court, when explaining those rights, "makes sure the accused has a full understanding of the concepts involved." (Citation omitted.) *Foster v. State*, 319 Ga. App. 815, 817 (2) (a) (738 SE2d 651) (2013).

Here, during the plea colloquy, the trial court advised Appellant that her guilty plea would "mean[] that the State is not going to have witnesses come in and testify and answer questions" and, also, that, by pleading guilty, Appellant's "lawyers [would] not cross-examine the State's witnesses." The wording here adequately conveyed to Appellant that, by pleading guilty, she was waiving her right to confront her accusers. See *Thomas v. State*, 231 Ga. 298, 299 (1) (201 SE2d 415) (1973) (holding that defendant was adequately advised of the right to confront accusers when trial court asked whether defendant understood that he had "a right to face any witness against you and to be here whenever any witness testifies against you and to have your attorney ask any questions").

Accordingly, Appellant has failed to show that the trial court abused its discretion in denying her motion to withdraw guilty plea and, thus, we affirm the judgment of the trial court.

*Judgment affirmed. Dillard, P. J., and Rickman, J., concur*.