## S10A1465. WILSON v. KEMP.

(727 SE2d 90)

HUNSTEIN, Chief Justice.

We granted Milton Wilson a certificate of probable cause to appeal the denial of his petition for habeas corpus in which he challenged the validity of his guilty plea on the basis, inter alia, that it was not entered voluntarily. We reverse because the plea hearing transcript shows that Wilson was not informed that a guilty plea waives his privilege against compulsory self-incrimination. See *Boykin v. Alabama*, 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969).

Wilson pled guilty to voluntary manslaughter at a mass guilty plea hearing on February 7, 2005. The transcript of the plea hearing reveals that Wilson, along with nearly 20 other defendants, heard the trial court initiate the proceedings by asking if they understood that each defendant was presumed to be innocent. Upon obtaining their affirmative replies, the trial court then stated:

> Let me also tell you that you have a right to remain silent thereby not giving any evidence against yourselves; however, if you want to proceed and dispose of your case by pleading guilty, I need for you to answer my questions out loud. We have a tape recorder going and a court reporter that's taking down what I say and takes down your responses to my questions and statements. Do ya'll [sic] understand that?

The transcript reflects that the trial court accepted Wilson's guilty plea without otherwise addressing the right against compulsory self-incrimination.

> "The entry of a guilty plea involves the waiver of three federal constitutional rights: the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers [cit.]. . . ." [Cit.] In a habeas corpus proceeding, the State has the burden to show that the defendant's guilty plea was voluntarily, knowingly, and intelligently made. [Cit.] Waiver cannot be presumed from a record that is silent. [Cit.] When the record reflects a failure to inform the defendant of each of his three *Boykin* rights prior to his entering a guilty plea, a judgment denying habeas relief must be reversed. [Cits.]

*Sanders v. Holder*, 285 Ga. 760, 761 (684 SE2d 239) (2009).

While nothing in *Boykin* requires the use of any precisely-defined language or "magic words" during a guilty plea proceeding, *Adams v. State*, 285 Ga. 744 (1) (683 SE2d 586) (2009), the trial court's discussion of Wilson's "right to remain silent" did not comply with the requirements of *Boykin*. That is because the trial court specifically limited its discussion of Wilson's "right to remain silent" to the guilty plea hearing itself,

without ever informing him that, by pleading guilty, he would waive that right at trial. See *Adams v. State*, supra at 746, fn. 3 (informing defendant of his "right to remain silent" is an acceptable substitute for the privilege against self-incrimination as long as it is clear that the trial court is referring to the right to remain silent "at trial"). Thus, the information the trial court provided Wilson failed to convey the essential concept of the right against compulsory self-incrimination that Wilson would be waiving by pleading guilty.

The record reflects that Wilson answered affirmatively at the guilty plea proceeding when asked whether he had been advised by his defense counsel of the "constitutional rights" he was waiving by pleading guilty. Likewise, defense counsel, when testifying at the habeas hearing, replied affirmatively to the question whether he had informed Wilson of his "constitutional rights." However, the specific "constitutional rights" referenced were never set forth at either proceeding.

> Counsel did not testify as to any details of his advice to [Wilson] concerning the rights he would be giving up; counsel did not identify the rights about which he advised [Wilson], or testify as to counsel's standard practice in advising criminal defendants before guilty pleas in relation to the *Boykin* rights, or even mention *"Boykin* rights" in his testimony. [Cit.]

*Arnold v. Howerton*, 282 Ga. 66, 67 (646 SE2d 75) (2007). Although, unlike counsel in *Arnold*, supra, counsel informed Wilson of his "constitutional" rights, there are several "constitutional" rights that may come into play with a guilty plea, see Uniform Superior Court Rule 33.8, but only the failure to inform a defendant of the three particular constitutional rights set forth in *Boykin* can support an award of habeas relief. See *Britt v. Smith*, 274 Ga. 611 (556 SE2d 435) (2001) (habeas relief granted only for the failure to inform a defendant of the three *Boykin* rights, not the rights set forth in USCR 33.8). Thus, counsel's acknowledgment that he informed Wilson of his "constitutional" rights is no more sufficient than the information counsel in *Arnold* provided regarding the "rights that [Arnold] would be giving up by pleading guilty." *Arnold*, supra at 67. We accordingly conclude that "the record in this case fails to show that any comment by the trial court, or by [Wilson's] counsel, informed him that by pleading guilty he would waive his privilege against compulsory self-incrimination. [Cit.]" Id. at 68. It follows that the habeas court erred by finding that the State met its burden of establishing that Wilson's guilty plea was made voluntarily, knowingly, and intelligently.

*Judgment reversed. All the Justices concur, except Carley, P. J., and Nahmias, J., who dissent.*

CARLEY, Presiding Justice, dissenting.

Although the majority acknowledges that *Boykin v. Alabama*, 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969) does not require the use of magic

words or precisely-defined language during a guilty plea proceeding, it nevertheless " 'elevate[s] formalistic litany of constitutional rights over the substance of the dialogue between the trial court and the accused.' [Cit.]" *Adams v. State*, 285 Ga. 744, 745 (1) (683 SE2d 586) (2009). See also *Hawes v. State*, 281 Ga. 822, 824 (642 SE2d 92) (2007).

The plea hearing transcript in this case "affirmatively shows that the trial court specifically advised [Wilson] of his right to remain silent," and "[t]he fact that the trial court advised [him] of this right at a separate point in the plea colloquy from its advisement to him of the remaining *Boykin* rights is of no legal significance." *Jackson v. State*, 285 Ga. 840, 841 (1), fn. 2 (684 SE2d 594) (2009). The trial court then explained that right in a reasonably intelligible manner by adding the words "thereby not giving any evidence against yourselves." See *Adams v. State*, supra.

The majority relies solely upon a dictum in a footnote of *Adams*, quoting an intermediate appellate court in Louisiana, that the phrase "right to remain silent" " 'frequently is used interchangeably with the "right against self-incrimination" and is an acceptable substitute as long as it is clear that the trial court is referring to the right to remain silent "at trial." (Cit.)' [Cit.]" *Adams v. State*, supra at 746 (1), fn. 3. I am not convinced that this dictum sets forth a controlling rule in Georgia. Moreover, even assuming that it does, the trial court's reference in this case clearly included the right to remain silent at trial.

Contrary to the majority, the trial court never limited the right to remain silent to the guilty plea hearing itself. Informing Wilson that he had a right to remain silent during the guilty plea hearing would be completely unnecessary because he himself requested the hearing. *Harrell v. State*, 275 Ga. 519, 520-521 (2) (570 SE2d 315) (2002). Instead, the trial court explained the procedure for waiving the right to remain silent by pleading guilty at the hearing. The majority confuses this explanation of waiver with placing a limitation on the right to remain silent. The trial court specifically stated, "however, if you want to proceed and dispose of your case by pleading guilty, I need for you to answer my questions out loud." This plain language simply expressed the procedure for waiver in a manner reasonably intelligible even to defendants of limited vocabulary and comprehension. See *Adams v. State*, supra. "The crucial issue is whether [Wilson] understood that his guilty plea was tantamount to a waiver of the right to remain silent, and the record shows that he did." *Harrell v. State*, supra at 521 (2).

Today's decision illustrates how far this Court has wandered from a correct understanding of *Boykin* by requiring a "formalistic litany of constitutional rights" and making that litany a constitutional right itself. See *Britt v. Smith*, 274 Ga. 611, 614 (556 SE2d 435) (2001) (recognizing the difference between the constitutional rights to which the accused is entitled and any constitutional requirement that he be informed of those rights). Indeed, the majority is so determined to adhere to this formalistic

litany that it reverses based on a failure to inform Wilson properly of his privilege against self-incrimination and the waiver thereof by a guilty plea, even though Wilson has never argued, either in his habeas petition or in this appeal, that his guilty plea was involuntary or uninformed for that reason. "In the wake of *Boykin*, most jurisdictions revised their procedures for taking pleas so that defendants were specifically warned of the constitutional rights lost by entry of a plea other than not guilty. [Cits.]" 5 Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, Criminal Procedure § 21.4 (e) (3d ed.). Although we now have a rule to that effect, "that Rule is not a constitutional provision, and habeas corpus relief is not available unless [the petitioner] suffered a substantial denial of his federal or state constitutional rights. [Cit.]" *Britt v. Smith*, supra at 612. Most jurisdictions, "often stressing the uniqueness of *Boykin* in that the defendant had been sentenced to death and his plea had apparently been accepted without any admonishments or inquiry whatsoever," have held that a guilty plea is not constitutionally defective merely because the trial court "failed to articulate specifically the constitutional rights listed in the *Boykin* case[.]" 5 LaFave, supra. Georgia's contrary understanding of *Boykin* places this state in a distinct minority. 5 LaFave, supra. Accordingly, I believe that the time has come to replace the formalistic litany currently required by this Court with the understanding of *Boykin* expressed by the majority of jurisdictions, as "we have always considered the [due process] rights that are conferred by our state constitution upon one who pleads guilty to be coextensive with those granted by the comparable provision of the federal constitution. [Cit.]" *Britt v. Smith*, supra at 614. Regardless of whether or not that time has arrived, I must respectfully dissent to the reversal in this case of the habeas court's order denying relief.

I am authorized to state that Justice Nahmias joins in this dissent.

DECIDED JANUARY 24, 2011 —
RECONSIDERATION DENIED MARCH 18, 2011.

Milton Wilson, *pro se.*

Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Daniel M. King, Jr., for appellee.