## S11A0253. TYNER v. THE STATE.
### (714 SE2d 577)

NAHMIAS, Justice.

This is Curtis Tyner's much delayed direct appeal of his 1984 malice murder conviction based on his guilty plea. Because the case is here on direct appeal and the record does not show that Tyner was advised of his right against self-incrimination as we have held is required by *Boykin v. Alabama,* 395 U. S. 238 (89 SC 1709, 23 LE2d 274) (1969), his guilty plea was invalid and we must reverse his conviction.

1. According to the factual basis offered in support of the guilty plea, in April 1984, IBM executive Martha Anne Mickel hired Tyner to paint her apartment. On April 15, Tyner forced Ms. Mickel into a car, tied her up, sexually assaulted her, and then dumped her, unconscious, in a creek. The autopsy showed that the victim was still alive and breathing when she was put into the water and that the cause of death was drowning. The police identified Tyner as a suspect from evidence found in the victim's apartment. He confessed to the police a few days later after being advised of his rights, even telling them where to find the victim's purse. Tyner denied, however, knowing that the victim was still breathing when he threw her in the creek. On April 27, 1984, Tyner was indicted for malice murder, and Carl Greenberg from the Fulton County Public Defender Office was appointed to represent him.

On September 25, 1984, Tyner pled guilty to malice murder. He later said that he pled guilty because the State had indicated that it would seek the death penalty if the case went to trial. The transcript of the plea hearing shows that Tyner was advised of and waived two of his three *Boykin* rights — the right to a jury trial and the right to confront the witnesses against him. However, he was not advised of his third *Boykin* right, the right against self-incrimination.

The trial court accepted the guilty plea and sentenced Tyner to life in prison. At the close of the hearing, the prosecutor suggested that the court should "[a]dvise him of his rights I think," apparently referring to Tyner's limited right to appeal his conviction and sentence based on a guilty plea. The court responded, "I don't think there's any need," and the hearing ended.

Within three months of the guilty plea, Tyner began filing pro se pleadings seeking review of his sentence and documents related to his case so that he could "get it back in court" and prepare "his

attack on the erroneous issue in his case." Tyner noted in a 1987 filing that "[a]n indigent defendant is entitled to obtain free of charge a transcript of his trial for purposes of a direct appeal of his conviction," and in another filing he complained that his letters to Greenberg had all come back marked "Return to Sender."

In 1986, 1987, and 1990, Tyner filed pro se petitions for habeas corpus, and the habeas court conducted an evidentiary hearing on each petition before denying relief. In 2008, Tyner filed a fourth habeas petition, which was dismissed as successive and procedurally barred. In 2009, Tyner filed a pro se motion for out-of-time appeal of his conviction, which the trial court summarily dismissed, and a pro se motion for new trial, which the court dismissed as untimely.

In April 2010, Tyner filed a pro se notice of appeal of the order denying an out-of-time appeal, and the following month he filed a motion for appointment of counsel. The trial court granted the motion, and Tyner, now represented by counsel apparently for the first time since 1984, withdrew his notice of appeal and filed a second motion for out-of-time appeal on June 30, 2010. Tyner alleged that he was not told that he had a right to appeal his conviction, that the court's remarks at the plea hearing gave him the impression that he could not appeal, and that his failure to file a timely appeal could not be attributed to any error or desire on his part. See *Birt v. Hopper*, 245 Ga. 221, 221, n. 1 (265 SE2d 276) (1980) (explaining that "[o]ut-of-time appeals are granted where a defendant in a criminal case is not advised of his right of appeal or his counsel fails to appeal" as directed). The State did not file a response to the motion or request a hearing, and on July 12, 2010, the trial court granted Tyner an out-of-time appeal. Tyner filed a timely notice of appeal of his conviction a week later.

2. Tyner's sole enumeration of error is that his guilty plea is invalid under *Boykin* because the State failed to meet its burden of showing that he knowingly and voluntarily waived his right against self-incrimination. With limited exceptions, the entry of a guilty plea waives all defenses *except* those that relate to the knowing and voluntary nature of the plea. See *Moore v. State*, 285 Ga. 855, 858 (684 SE2d 605) (2009). Once a defendant raises a question about the validity of a guilty plea, the State bears the burden to establish that the plea was knowingly and voluntarily entered. See *King v. State*, 270 Ga. 367, 369 (509 SE2d 32) (1998) (on direct appeal); *Bazemore v. State*, 273 Ga. 160, 161 (535 SE2d 760) (2000) (in habeas corpus). In reviewing a direct appeal from a guilty plea, this Court must evaluate the enumerated errors based solely on "the trial court record, including the record of the guilty plea and sentencing as well as any subsequent evidence that was properly presented to the reviewing court, assuming all of that is also properly included in the

record on appeal." *Smith v. State*, 287 Ga. 391, 403 (697 SE2d 177) (2010).

The State concedes the existing record does not show that Tyner was advised of his right against self-incrimination and acknowledges that our usual course where we find a *Boykin* violation on direct appeal is to reverse the invalid conviction and remand the case for further proceedings. The State nevertheless asks us not to decide the *Boykin* issue but first to remand the case to the trial court, where Tyner should be required to file a motion to withdraw the guilty plea, which would give the State the opportunity to try to show that Tyner's attorney informed him of his right against self-incrimination before he pled guilty. See *Bazemore*, 273 Ga. at 161 (noting that the State may carry its burden of showing that the defendant was advised of and waived his *Boykin* rights not only with the plea hearing record but with extrinsic evidence properly in the record, including evidence from plea counsel). However, the State cites no authority supporting such a procedure, and we have explained that "a defendant who hopes to appeal successfully from a guilty plea is not required to first file a motion to withdraw the plea." *Smith*, 287 Ga. at 403, n. 7.

3. Shortly before oral argument, the State filed a motion to dismiss Tyner's appeal. The State argued that the trial court erred in granting an out-of-time appeal and that Tyner's unsuccessful habeas petitions should bar us from reversing his conviction. However, we see no basis for the State to appeal the order granting the out-of-time appeal or to file a cross-appeal in this criminal case, and it did neither. See OCGA § 5-7-1 (limiting the matters the State may appeal in criminal cases and not authorizing the State to cross-appeal).[1] Likewise, the State has conceded that Tyner's *Boykin* claim was dismissed for procedural default when he raised it for the first time in his fourth habeas petition, which was not an adjudication on the merits and thus is not res judicata as to his current claim. See *Wiggins v. State*, 288 Ga. 169, 170 (702 SE2d 865) (2010) (holding that claims raised on direct appeal are not barred by denial of a prior habeas petition raising the identical claims where the habeas court ruled that the claims were procedurally defaulted instead of denying the claims on the merits).

4. We recognize that reversal of Tyner's 27-year-old murder conviction may make it difficult for the State to try him or negotiate another plea. We also note that the record does not suggest that

---

[1] Accordingly, the merits of the order granting this out-of-time appeal – including whether the trial court should have held a hearing to determine whether Tyner was at fault for the failure to timely appeal and the effect of the court's order dismissing Tyner's first motion for out-of-time appeal – are not before us for decision.

Tyner would have refused to go through with his guilty plea if during the plea hearing the prosecutor had added the words "and the right against compulsory self-incrimination" after advising Tyner of his "right to cross-examine witnesses called by the State or call witnesses in your own defense." Nor has Tyner alleged any such prejudice. Instead, the record as a whole indicates that Tyner freely made an informed and very reasonable decision to plead guilty, with the assistance of able counsel and after colloquy in open court, because he understood that the evidence that he had committed a horrific abduction, sexual assault, and murder was strong and his guilty plea would prevent the State from seeking the death penalty if the case went to trial.

Nevertheless, in a number of decisions over the past decade this Court has interpreted advice and waiver of the "three *Boykin* rights" as a strict constitutional requirement, with reversal the automatic consequence if any deviation is found to have occurred. See, e.g., *Wilson v. Kemp*, 288 Ga. 779, 780-781 (707 SE2d 336) (2011); *Arnold v. Howerton*, 282 Ga. 66, 67-68 (646 SE2d 75) (2007). Under those decisions, Tyner's guilty plea was invalid, and his conviction must be reversed and the case remanded to the trial court for further proceedings.

Presiding Justice Carley dissented in *Wilson*, arguing that the Court has interpreted *Boykin* too formalistically and more strictly than the majority of other courts in the country. See *Wilson*, 288 Ga. at 780, 782 (Carley, P. J., joined by Nahmias, J., dissenting). Moreover, in 1982 this Court unanimously held, in contradiction to *Wilson*, that "[w]e decline to adopt a rule which would demand that failure to advise an accused of his right against self-incrimination invalidates a guilty plea in a case where the record reflects that the central considerations of *Boykin* have otherwise been met." *Goodman v. Davis*, 249 Ga. 11, 14 (287 SE2d 26) (1982). Compare *Wilson*, 288 Ga. at 780 (reversing Wilson's guilty plea because there was no showing that he was specifically advised of the right to remain silent *at trial*, even though the trial court did advise Wilson that he had "a right to remain silent" at the guilty plea proceeding and Wilson's counsel testified that he had advised Wilson of the "constitutional rights" he was waiving by pleading guilty). Under *Goodman*, Tyner's guilty plea would likely be deemed valid and his conviction affirmed.

It is not entirely clear how this Court got from *Goodman* to *Wilson*.[2] *Goodman* remains on the books, having never been over-

---

[2] It appears that the first time this Court even mentioned "the three *Boykin* rights" was in 1999 – 30 years after *Boykin* and 17 years after *Goodman* – as dicta in a decision involving the issue of who has the burden of proof when a recidivism defendant claims that a prior conviction by guilty plea was invalid under *Boykin*. See *Nash v. State*, 271 Ga. 281, 285 (519

ruled or disapproved. But it was not cited by any party in this case, perhaps because it is so plainly inconsistent with our more recent precedent. The bottom line is this: Until the Supreme Court of the United States grants certiorari in this or a future case and tells us we are applying *Boykin* incorrectly, or a majority of this Court is convinced that we should re-examine our cases in this area and revert to our earlier understanding of *Boykin*, any defendant who pleads guilty will be able to secure a reversal of his conviction if the record does not show that he was specifically advised of each of the "three *Boykin* rights" and he properly presents the issue to a reviewing court.

Finally, we should note that the State could have avoided the result in this case. The State could have ensured that the right against compulsory self-incrimination was discussed during Tyner's plea hearing, and it could have ensured that he was advised of and had effective representation regarding his right to appeal his conviction. Indeed, had Tyner filed his direct appeal during the 15 or so years after his 1984 guilty plea, his conviction would likely have been affirmed under *Goodman*. In addition, while the State was entitled to rely on procedural bars and the successive petition statute to defeat Tyner's habeas corpus petitions, including the final one in which he raised a *Boykin* claim, it could have sought alternatively to litigate the merits of his guilty plea in a habeas hearing, had it wanted to expand the record.

*Judgment reversed and case remanded. All the Justices concur, except Hunstein, C. J., Benham, Thompson, Hines and Melton, JJ., who concur in Divisions 1, 2, and 3, and in the judgment.*

---

SE2d 893) (1999). The *Nash* majority quoted a Louisiana case that said:

> If the State introduces anything less than a "perfect" transcript [of the prior guilty plea], . . . the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of *the three Boykin rights*.

*State v. Shelton*, 621 S2d 769, 780 (La. 1993) (emphasis added). Interestingly, two years later the Court disavowed the immediately preceding portion of this quotation. See *Motley v. State*, 273 Ga. 732, 733, n. 3 (546 SE2d 468) (2001) ("The adoption [in *Nash*] of the burden of proof set forth in *Shelton* was not an adoption of Louisiana's requirement, if any, that a guilty plea must be made 'with an *articulated waiver* of the three *Boykin* rights.'" (emphasis in original)). The "three *Boykin* rights" appear to have assumed their preeminent status in 2001, in *Britt v. Smith*, 274 Ga. 611 (556 SE2d 435) (2001). There a four-Justice majority held that to make a guilty plea valid, defendant must be advised *only* of the three constitutional rights mentioned in *Boykin*, and not the other rights enumerated in Uniform Superior Court Rule 33.8. See 274 Ga. at 614. The majority explained that "our decisions dealing with the validity of a guilty plea are generally couched in terms of the defendant's waiver of the three *Boykin* rights," id. at 614, although the only case cited for this proposition was *Nash*. Neither *Nash* nor *Britt* mentioned *Goodman* or similar precedent interpreting *Boykin* more flexibly. In any event, for the last decade the Court has focused strictly and solely on what the record shows regarding the "three *Boykin* rights."

DECIDED JUNE 20, 2011 —
RECONSIDERATION DENIED JULY 21, 2011.

*Charles H. Frier,* for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Marc A. Mallon, Paige R. Whitaker, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellee.