HINES, Presiding Justice,
dissenting.
I respectfully dissent because the opinion of the majority upturns well-established and well-founded Georgia precedent, and, under the facts of this case, will result in a legal distinction without an effective difference.
Lejeune was indicted for two counts of malice murder, felony murder, aggravated assault, concealing the death of another, and possession of a firearm during the commission of a crime, and the State sought the death penalty. Lejeune’s first trial ended in a mistrial, and it was in the midst of his second trial that Lejeune entered his negotiated plea of guilty to one count of malice murder and was sentenced to life without the possibility of parole. Brian Steel and August Siemon represented Lejeune at both trials, with Steel acting as lead counsel. However, Steel withdrew from the case prior to Lejeune entering his guilty plea, and Siemon alone represented Lejeune at the plea hearing. Lejeune filed the present habeas corpus petition, alleging that his guilty plea was not entered into voluntarily and intelligently because the trial court failed to advise him of all of the constitutional rights he would be waiving by entering the plea. Following a hearing on the petition, the habeas court rejected Lejeune’s challenge to the plea and denied the requested relief. This Court granted Lejeune’s application for a certificate of probable cause to appeal the denial of his petition for a writ of habeas corpus expressly to determine whether the habeas court properly concluded that Lejeune’s plea was knowingly and voluntarily entered. And, that is what this Court should do.
When a criminal defendant challenges the constitutionality of his guilty plea, it is the State’s burden to show that the plea was informed and voluntary, including that the defendant made an articulated waiver of the three constitutional rights set forth in Boykin v. Alabama, 395 U. S. 238 (89 SCt 1709, 23 LE2d 274) (1969), which are the right to trial by jury, the privilege against self-incrimination, and the right to confront one’s accusers. Lewis v. State, 293 Ga. 544, 545 (748 SE2d 414) (2013).* **[9] For more than 40 years this *301 Court has firmly held that this is so specifically in the context of a habeas corpus proceeding. Indeed, in 1971, in Purvis v. Connell, 227 Ga. 764 (182 SE2d 892) (1971), this Court acknowledged the general burden of the petitioner in a habeas proceeding, but made the deliberate decision to have the State, in a Boykin challenge, bear the responsibility of showing voluntariness of the plea not only on direct appeal but also in habeas cases. Purvis v. Connell, supra at 767. As acknowledged by the majority, since Purvis, this Court has issued a legion of decisions adhering to the determination to have the Boykin burden remain the State’s in a habeas proceeding. See, e.g., Tyner v. State, 289 Ga. 592, 593 (2) (714 SE2d 577) (2011); Wilson v. Kemp, 288 Ga. 779 (727 SE2d 90) (2011); Sentinel Offender Services, LLC v. Harrelson, 286 Ga. 665, 666 (1) (690 SE2d 831) (2010); Sanders v. Holder, 285 Ga. 760, 761 (684 SE2d 239) (2009); Bullard v. Thomas, 285 Ga. 545 (1) (678 SE2d 897) (2009); State v. Hemdani, 282 Ga. 511 (651 SE2d 734) (2007); Arnold v. Howerton, 282 Ga. 66, 67-68 (646 SE2d 75) (2007); Hawes v. State, 281 Ga. 822 (642 SE2d 92) (2007); State v. Cooper, 281 Ga. 63, 64 (1) (636 SE2d 493) (2006); Beckworth v. State, 281 Ga. 41, 42 (635 SE2d 769) (2006); Green v. State, 279 Ga. 687 (620 SE2d 788) (2005); Baisden v. State, 279 Ga. 702 (620 SE2d *302 369) (2005); State v. Futch, 279 Ga. 300, 301 (1) (612 SE2d 796) (2005); Foskey v. Battle, 277 Ga. 480, 482 (591 SE2d 802) (2004); Britt v. Smith, 274 Ga. 611, 612 (556 SE2d 435) (2001); Bazemore v. State, 273 Ga. 160, 161 (1) (535 SE2d 760) (2000); Byrd v. Shaffer, 271 Ga. 691, 692 (2) (523 SE2d 875) (1999); Knight v. Sikes, 269 Ga. 814 (504 SE2d 686) (1998); Glover v. Jones, 245 Ga. 848 (268 SE2d 156) (1980); Mason v. Banks, 242 Ga. 292 (248 SE2d 664) (1978); Andrews v. State, 237 Ga. 66 (1) (226 SE2d 597) (1976).
This Court’s position was not diminished by the Supreme Court’s 1992 decision in Parke v. Raley, 506 U. S. 20 (113 SCt 517, 121 LE2d 391) (1992), which dealt with a collateral attack in a recidivist proceeding. In fact, post Parke v. Raley, this Court in Byrd v. Shaffer, supra, confirmed its intent to require the State to show the voluntariness of a plea in habeas cases.[10] Indeed, the argument for shifting the evidentiary burden was made and soundly rejected. Id. at 693 (2). And, while 15 years ago I joined then Justice Carley’s dissent in Byrd v. Shaffer, I recognize that imposing opposite burdens in a Boykin challenge on direct appeal and on habeas may be problematic as a matter of policy and practice.
As noted by Justice Hunstein in her concurrence in Byrd v. Shaffer, a habeas corpus proceeding filed by a defendant who pled guilty to the challenged conviction may be different from the situation of a recidivist defendant, in that a habeas petitioner challenging the voluntariness of a guilty plea can raise the issue only if it has not been procedurally defaulted; when a timely direct appeal was not brought from a conviction on a guilty plea, habeas corpus is the only remedy for a criminal defendant who subsequently asserts that his plea was not knowingly and voluntarily entered based on a matter *303 which requires examination of evidence outside the record. Byrd v. Shaffer, supra at 694. In such a situation, the habeas petitioner essentially is in the same position as a defendant who has directly appealed his guilty plea. Id. at 695.
Equally problematic is the majority’s abandonment of precedent in this case as it is in flagrant disregard of the important principle of stare decisis and promotes a practice of singular case rule. This Court, and in fact the author of the majority, most recently affirmed the great significance of stare decisis in our system of justice:
As a general rule, American courts adhere to the principle of stare decisis, which directs the courts to stand by their prior decisions. We have noted that the application of the doctrine of stare decisis is essential to the performance of a well-ordered system of jurisprudence. As the United States Supreme Court has explained, very weighty considerations underlie the principle that courts should not lightly overrule past decisions. Among these are the desirability that the law furnish a clear guide for the conduct of individuals, to enable them to plan their affairs with assurance against untoward surprise; the importance of furthering fair and expeditious adjudication by eliminating the need to relitigate every relevant proposition in every case; and the necessity of maintaining public faith in the judiciary as a source of impersonal and reasoned judgments.
Smith v. State, 295 Ga. 120, 121-122 (757 SE2d 865) (2014) (Blackwell, J.) (citations and punctuation omitted). Certainly, there may be compelling reasons to reexamine an earlier decision. Id. at 122. But, there is no such urgent need in this case; our original interpretation of the mandate of Boykin is nearly half a century old, and the fifteen-year-old controlling precedent confirming that decision has been imminently workable, and takes into account the important policy considerations outlined above. Smith v. State, supra at 121-122. It also is an acknowledgment of the gravity of a Boykin challenge, for advice and waiver of the three Boykin rights is a strict constitutional requirement. Tyner v. State, supra at 595 (4).
Even if we were to overrule our long standing precedent in this regard, and shift the burden to the petitioner, this is not the appropriate vehicle in which to do so, and remand the case for yet another hearing, in that the undisputed record shows a Boykin violation. Regardless of who technically had the burden, there was an extensive hearing below, and neither the record of the plea proceeding nor the *304 offered extrinsic evidence permits the legal conclusion that Lejeune was advised of the right against self-incrimination.
As the habeas court expressly concluded, the transcript of the guilty plea hearing clearly reflects that the plea court informed Lejeune of his rights to trial by jury and to confront witnesses against him, and that Lejeune waived these rights. But, the record also plainly reveals that while the plea court did inform Lejeune that he would be giving up the right to testify during a jury trial, it did not tell him that he would be forfeiting the privilege not to incriminate himself upon entering a guilty plea.[11] Merely informing a defendant of his Sixth Amendment right to testify at trial if the defendant so wishes is insufficient to alert a defendant of his Fifth Amendment right not to incriminate himself. Hawes v. State, supra at 825. Nevertheless, the habeas court concluded that after consideration of the guilty plea hearing transcript along with the record, it was “convince[d]” that Lejeune was informed that he was waiving his right not to incriminate himself, was aware of his right against self-incrimination, and knowingly waived that right by entering the guilty plea. In addition, the habeas court concluded that by making the strategic decision to testify during his first trial in 2005, Lejeune understood that he could choose not to testify, and therefore, remain silent at trial. Relying on Parke v. Raley,[12] for the proposition that a defendant’s prior experience with the criminal justice system is relevant to the question of whether the defendant knowingly waived constitutional rights, the habeas court held that the record and Lejeune’s experience throughout the criminal case sufficiently demonstrated that he was aware of the rights he was waiving by entering the guilty plea, and therefore, his guilty plea was knowingly, intelligently, and voluntarily entered.
The habeas court’s conclusions were premised upon express findings, which included in relevant part: prior to Lejeune’s initial jury trial and at three separate hearings pursuant to the Unified Appeal Procedure at which Lejeune was present, his counsel informed *305 the trial court that Lejeune would exercise his rights under the Fifth Amendment and remain silent; in preparation for the first trial, Lejeune was informed that it was his choice whether to testify; in preparation for the second trial, counsel again discussed with Lejeune whether he would choose to testify and in that exchange “did discuss what we would call Boykin ... rights with [Lejeune]”; prior to the guilty plea, attorney Siemon advised Lejeune that he would be waiving certain rights by entering the guilty plea; Siemon discussed with Lejeune “what would happen when they went before the judge... that [Lejeune] would be asked certain questions”; Siemon would “say something about... that by entering a guilty plea that would end the trial and there are certain rights associated with the trial that he would waive, although [Siemon] wouldn’t necessarily enumerate the rights without a written plea form”; after having done hundreds of pleas, Siemon did not have a clear recollection of what he advised Lejeune; Siemon “agree[d]” that by entering a guilty plea constitutional rights are waived; Siemon would have advised Lejeune “generally that was the case,” advised him “of what he was pleading guilty to,” and would talk about the sentence, Siemon stating “I know we did in this case . . . and I think I did all of that.”[13]
This Court reviews a habeas court’s findings of fact for clear error, and as the majority concedes, certain pivotal findings of fact by the habeas court in this case do not survive such a standard of review. See Denson v. Frazier, 284 Ga. 858, 860 (672 SE2d 625) (2009). Furthermore, the habeas court’s legal analysis is flawed.
First, as stated in the majority, the habeas court’s findings regarding Lejeune’s exercise of his Fifth Amendment right to remain silent at hearings prior to his first trial do not support the habeas court’s conclusions as a matter of law. The phrases “right to remain silent” and “right against self-incrimination” can be synonymous for the purpose of satisfying Boykin if it is evident that the reference is to the right to remain silent at trial. Campos v. State, 292 Ga. 83, 85 *306 (734 SE2d 359) (2012). That is plainly not the situation here. The cited invocations were before Lejeune’s first trial, the most recent made nearly two-and-a-half years prior to the entry of his plea. More significantly, they were made by Lej eune’s attorney in direct response to the trial court’s inquiries as to whether Lejeune was satisfied with the services of his counsel. As previously noted and acknowledged by the habeas court, mere familiarity with the criminal justice system will not support the determination that a plea was knowing and voluntary. See footnote 12, supra.
Second, the habeas court’s finding that Lejeune was informed about his choice to testify prior to his first trial does not lend legal support for sustaining the guilty plea. Again, for the purposes of Boykin, informing a defendant of his Sixth Amendment right to testify at trial does not equate to knowledge by him of his Fifth Amendment privilege against self-incrimination which is being waived by the plea proceeding. Hawes v. State, supra at 825.
The cited statements about attorney Siemon’s conversations with Lejeune are at best vague, general, and speculative, and therefore, do not serve as a legal basis for upholding the plea under Boykin. See Lawrence v. State, 234 Ga. App. 603 (507 SE2d 490) (1998).
Finally, as also conceded by the majority, the facially favorable finding by the habeas court that in discussion with Lejeune in preparation for his second trial, attorney Steel “did discuss what we would call Boykin . . . rights with [Lejeune]” does not withstand scrutiny either. The habeas court expressly noted that the discussion was in the context of whether Lejeune would testify at trial, which might well be insufficient to satisfy the requirements of Boykin with respect to the right not to incriminate oneself. Hawes v. State, supra at 825. Even more significantly, as highlighted by the majority, examination of this fragment of a deposed statement by Steel in the context of the complete sentence and of Steel’s entire deposition testimony makes plain that it was not intended to be an affirmative statement, but quite the contrary, and that at no point did he advise Lejeune that by entering a guilty plea he would waive certain rights. The cross-examination of Steel left no doubt that Steel’s direct testimony was negative on the question of whether he had advised Lejeune of the Boykin rights. Thus, the habeas court’s positive finding in regard to the statement is clearly erroneous, and therefore, not valid factual support for the plea.
In a guilty plea proceeding, there must be affirmative evidence that a defendant’s rights were conveyed to him, including that the right against compulsory self-incrimination would be waived by *307 pleading guilty. State v. Hemdani, supra at 512. This is warranted because
Decided November 24, 2014.
Adam M. Hames, for appellant.
Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vicki S. Bass, Assistant Attorney General, for appellee.
Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Assistant District Attorney, amici curiae.
[t]he waiver of constitutional rights that occurs when a plea of guilty is entered is so great that it demands that utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences.
Bowers v. Moore, 266 Ga. 893, 894 (1) (471 SE2d 869) (1996) (citations and punctuation omitted). In this case, there was no affirmative evidence that either the plea court or trial counsel entered into a colloquy with Lejeune and explained, even in essence, his right against self-incrimination.
Thus, even if the evidentiary burden was Lejeune’s, he has carried it, and the judgment of the habeas court should not stand for that reason. The majority seeks to justify remand, in part, to “afford Lejeune a fair opportunity’ to once again “carry that burden.” This is disingenuous at best. And, it is difficult to fathom the fairness, or indeed reasonableness, in requiring either the prisoner or the State to again plow the same ground of a plea made nearly a decade ago, the circumstances of which have not changed. Neither the case at bar nor the judicial process is served by further hearing in this matter.
I am authorized to state that Justice Benham and Justice Hunstein join in this dissent.

 The State’s burden can be met by showing on the record that the defendant was aware of his rights and that he waived those rights, or by using extrinsic evidence that shows *301 affirmatively that the defendant entered the guilty plea knowingly and voluntarily. Bazemore v. State, 273 Ga. 160, 161 (1) (535 SE2d 760) (2000). If the State does not make this showing, the defendant’s guilty plea will be deemed invalid. Id. It should be noted that more than 30 years ago, Goodman v. Davis, 249 Ga. 11 (287 SE2d 26) (1982), issued from this Court. In that case, following pleas of guilty to burglary and aggravated assault on a peace officer, the defendant filed a petition for habeas corpus challenging the validity of his pleas on the bases that at the time he tendered his pleas, the plea court failed to advise him of his right against self-incrimination, and therefore, his pleas were not voluntarily entered. He maintained that under Boykin the plea court’s failure to determine, on the record, whether he knowingly waived his right against self-incrimination prior to accepting his guilty pleas required reversal and invalidation of the pleas. This Court stated that it did “not read Boykin as requiring the invalidation of a voluntarily made guilty plea where the record clearly reflects that the accused fully understands the nature of the charges against him and the consequences of entering a guilty plea, but the court fails to specifically advise him that he has aright to remain silent prior to accepting the guilty plea.” Id. at 13 (Emphasis supplied.) The Court went on to state that it construed Boykin as requiring that there be a sufficient record of the plea proceeding to determine whether the defendant had freely and voluntarily entered the plea, and understood the nature of the charges against him and the consequences of his plea; that Goodman did not allege that he was in any way prejudiced by the failure of the plea court to advise him of his right to remain silent; and that any error in failing to advise Goodman of his right against self-incrimination was, under the facts of the case, harmless. Id. at 14. The Court concluded that the record showed that Goodman’s pleas were voluntarily entered, and “declinefd] to adopt a rule which would demand that failure to advise an accused of his right against self-incrimination invalidates a guilty plea in a case where the record reflects that the central considerations of Boykin have otherwise been met.” Id. Since Goodman, this Court has consistently viewed “advice and waiver of the ‘three Boykin rights’ as a strict constitutional requirement, with reversal the automatic consequence if any deviation is found to have occurred.” Tyner v. State, 289 Ga. 592, 595 (4) (714 SE2d 577) (2011). Thus, to the extent that Goodman is an anomaly, it should be disapproved.

 The majority opinion concludes that Purvis and its progeny incorrectly apply federal constitutional law, and criticizes this dissent as not attempting to argue otherwise. But, the linchpin of the majority’s conclusion that this Court has for decades misapplied federal constitutional law is its unbounded reading of Parke v. Raley as a mandate to burden shift when a Boykin challenge is made in a habeas proceeding. Moreover, the majority’s criticism fails to take into account any impact of the constitutional law of this State. A state high court certainly has the right to interpret its State Constitution to grant individuals more rights than those provided by the Federal Constitution. Powell v. State, 270 Ga. 327, 331, n. 3 (510 SE2d 18) (1998). As noted earlier, Boykin identifies three federal constitutional rights that are waived when a plea of guilty is entered in a state criminal trial, i.e., the privilege against self-incrimination, the right to trial by jury, and the right to confront one’s accusers. The Constitution of the State of Georgia also guarantees those three rights. See Ga. Const. of 1983, Art. I, Sec. I, Par. XVI (privilege against self-incrimination); Art. I, Sec. I, Par. XI (right to trial by jury); Art. I, Sec. I, Par. XIV (right to confront adverse witnesses). Indeed, this Court has held that the Georgia Constitution affords broader protection than the federal constitution in regard to the privilege against self-incrimination. Green v. State, 260 Ga. 625, 627 (398 SE2d 360) (1990). The protections guaranteed to the citizens of Georgia provide further support for maintaining that the State bear the responsibility for showing the voluntariness of a plea in habeas cases.

 The plea judge testified by deposition in the habeas corpus proceeding that she was not aware of any conversations during which Lejeune would have been advised of the rights he was waiving by entering the guilty plea; that if a plea was entered in the midst of a trial, the typical practice was to have any conversations prior to entry of the plea outside the judge’s presence and to then “go on the record” for entry of the plea; and that the judge would not participate in pre-trial negotiations or discussions, and would not have off-the-record conversations about “who gets told what” during the course of the plea.

 In so doing, the habeas court acknowledged that this Court has rejected the proposition that the State may demonstrate the voluntariness of a plea by showing that the defendant had prior experience in the criminal justice system. See State v. Futch, supra at 301 (2); Foskey v. Battle, supra at 482 (1); Bazemore v. State, supra at 162 (1).

 At the habeas hearing, Siemon testified that other than possible sentences, he was “not sure” of what else he advised Lejeune regarding entry of the guilty plea; that he “essentially” told Lejeune that he would be waiving certain rights by entering the plea but did not “recall specifically” what he advised Lejeune “in terms of any rights that he would have been waiving”; and that as a general practice, he relied on plea forms to advise clients of the specific rights they were about to waive upon entering a guilty plea. In this case, there is no plea form in the record before the habeas court. When asked what he would do without a plea form, Siemon said “I can’t, I don’t think there’s -1 don’t think I have a usual practice for when there’s no plea form because it’s so rare not to have a plea form. I think if I had a case where there was no plea form, I would figure that the judge was going to read all of those rights in the record, on the record, and that’s why there was no plea form.”