In the Supreme Court of Georgia

Decided:   July 05, 2016

S16A0405.  SHEPARD v. WILLIAMS.

THOMPSON, Chief Justice.

In May 2011, appellee Kealy Williams pled guilty to charges of malice murder, felony murder, hijacking a motor vehicle, armed robbery, two counts of aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony.  He was sentenced to life in prison on the malice murder conviction, twenty years imprisonment for his convictions for hijacking, armed robbery and aggravated assault, and a consecutive, suspended five year sentence for the possession of a firearm conviction.  In April 2013, he filed a pro se petition for habeas corpus contending, inter alia, that his plea was not voluntarily entered and that his trial counsel provided ineffective assistance.  After a hearing, the habeas court granted Williams' petition, concluding that his plea was invalid because he was not of "sufficiently sound mind and intelligence" to make an informed decision to plead guilty and that

he was denied effective assistance of counsel under <u>Strickland v. Washington</u>, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984). Stan Shepard, in his capacity as the warden of the Augusta State Medical Prison, appealed the habeas court's ruling, and after reviewing the record and applicable legal authorities, we reverse the grant of habeas relief in this case.

The evidence, as set out in the indictment and the plea hearing transcript, reveals that victims Terrance Harris and Edward Carmichael were washing Harris' car in a drive-thru car wash when Williams approached and shot Harris. Both victims fled on foot, and Harris subsequently died. Harris' car, which was taken by Williams, was later discovered abandoned. The day following the crimes, Williams became distraught while watching news coverage of the murder and told family members that he knew something about the crimes. During an interview with police, he admitted (1) he went to the car wash with a gun looking for a car to steal and for drugs; (2) he pulled out his gun as he approached Carmichael, who was standing outside the car; (3) he only meant to scare Harris, who was sitting in the car; (4) Harris got out of the car and ran "after the gunshot;" and (5) he (Williams) did not know whether Harris had been shot. Williams also told officers that he "shot like two or three times," then drove around for a while, abandoned the car, threw the gun in a sewer,

and took Carmichael's blue jacket from the car. The blue jacket was later recovered from Williams' closet.[1]

With regard to Williams' claim of ineffective assistance of counsel, the habeas court found that Williams was provided an attorney through the Fulton County Public Defender's office but no evidence was presented regarding the identity of Williams' counsel or how many public defenders had been assigned to represent him over the course of the proceedings. What is known is that two months before Williams' scheduled trial date, public defender LaWanda O'Bannon assumed responsibility for his case. The habeas court found that O'Bannon was an experienced criminal trial litigator who, in her preparation for trial, searched for witnesses, located an alibi witness, and engaged an expert witness willing to testify on Williams' behalf concerning the reasons why an individual might falsely confess to a crime. Based on these actions, the habeas court concluded that O'Bannon represented Williams "well" and provided him with effective assistance. It determined, however, that the Fulton County

---

[1] Williams later recanted his statement, asserting that at the time of the crimes he was watching television with a neighborhood friend.

Public Defender's office provided ineffective assistance by failing "to provide Williams with consistent representation."[2]

Immediately prior to a scheduled trial, the trial court ruled inadmissible any testimony from the defense's expert on false confessions. Following this ruling, Williams decided to plead guilty. His plea was accepted by the trial court after a plea colloquy during which the State's evidence, including Williams' statement to police, and the nature of the charges set out in the indictment were discussed and after questioning by the trial court as to the voluntariness of the plea. The habeas court nevertheless found that Williams' plea was not voluntary because, faced with a waiting jury and the trial court's evidentiary ruling, Williams "was not of sufficiently sound mind and intelligence to make an informed decision, *on the spot*, whether to proceed with trial or plea." In addition, the habeas court found several factors contributed to a "confluence of circumstances" that rendered Williams' plea not voluntary and, therefore, invalid. These factors included the habeas court's finding that Williams had no criminal record; he never admitted in his statement to police that he shot the victim; he was never asked nor did he admit the acts for which

---

[2] The habeas court also recognized in its order that this was "probably not [an] actionable" ground for ineffective assistance of counsel.

he was charged at the plea hearing; he never affirmed the prosecutor's proffer at the plea hearing; counsel had less than two months to prepare for trial; the trial judge did not participate in the plea colloquy; Williams' family encouraged him to enter a plea; and although he was found competent to stand trial, Williams suffered "from some low functioning ability."

1.  We first address the habeas court's ruling that Williams' plea was invalid because it was not voluntarily and knowingly entered.

As acknowledged by the United States Supreme Court in Brady v. United States, 397 U.S. 742, 748 (90 SCt 1463, 25 LE2d 747) (1970), "a guilty plea is a grave and solemn act to be accepted only with care and discernment."

> Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment. He thus stands as a witness against himself and he is shielded by the Fifth Amendment from being compelled to do so -- hence the minimum requirement that his plea be the voluntary expression of his own choice. But the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial -- a waiver of his right to trial before a jury or a judge.  Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.

Id.  The focus of any inquiry into the voluntary nature of a guilty plea, therefore, is "to determine whether the defendant actually *does* understand the

significance and consequences of a particular decision and whether the decision is uncoerced." Godinez v. Moran, 509 U.S. 389, 401 n.12 (113 SCt 2680, 125 LE2d 321) (1993) (emphasis in original).

The habeas court here correctly relied on its evaluation of the totality of the circumstances in evaluating whether Williams' plea was voluntarily and intelligently entered. See Brady, 397 U.S. at 749 (stating that the voluntariness of a "plea can be determined only by considering all of the relevant circumstances surrounding it."). The findings and the conclusions on which its ruling is based, however, do not stand up under scrutiny.

As determined by the habeas court, Williams' decision to plead guilty was prompted by the trial court's decision to disallow the testimony of Williams' expert witness and his imminent trial. This circumstance and the unavoidable pressure it produced do not render his plea involuntary. See Brady, 397 U.S. at 750 ("State's responsibility for some of the factors motivating the pleas" through its participation in the criminal process does not invalidate a guilty plea; such a plea is "no more improperly compelled than is the decision by a defendant at the close of the State's evidence at trial that he must take the stand or face certain conviction."). Williams' situation was, in fact, no different than that of any other criminal defendant who must decide

whether to proceed to trial and put the State to its proof or plead guilty. Accordingly, the habeas court erred to the extent it gave weight to this factor in determining that Williams' plea was involuntary.

Nor do we find sufficient evidence in the record to support the habeas court's conclusion that Williams' plea was not entered knowingly. A knowing plea is one where the defendant pleading guilty has "a full understanding of what the plea connotes and of its consequence." Boykin v. Alabama, 395 U.S. 238, 244 (89 SCt 1709, 23 LE2d 274) (1969). See also Lejeune v. McLaughlin, 296 Ga. 291, 291-292 (1) (766 SE2d 803) (2014) ("For a plea to be knowing and intelligent, the accused must have 'sufficient awareness of the relevant circumstances and likely consequences' of his plea. [Cit.].)" The record in this case shows that Williams was fully informed of the nature of the charges and the consequences of his plea. His plea was entered in open court after he was made aware of the State's charges against him and the evidence the State expected to present at trial to establish his guilt. See Petty v. Smith, 279 Ga. 273, 276 (612 SE2d 276) (2005) ("when establishing the factual basis for a guilty plea, the State need not produce the same quantum or quality of information required to uphold a jury verdict."). The trial court accepted the plea after satisfying itself through its own questioning that the plea was made

voluntarily and intelligently and that Williams' admissions were accurate and reliable to prove that he committed the crimes charged. See Brady, 397 U.S. at 748. Although, as pointed out by the habeas court, Williams' admission to police did not include the precise words, "I shot Harris," he undisputedly admitted that he shot the gun "two or three times" with the intention to scare Harris. He also admitted that he committed the acts charged in the indictment when he pled guilty to those crimes. See Wilson v. Reed, 246 Ga. 743, 743 (1) (272 SE2d 699) (1980) (recognizing that "[a] plea of guilty admits the facts set forth in an accusation or indictment"). The record further establishes that Williams was deemed competent to stand trial and was advised by competent counsel with regard to his decision to plead guilty. Plea counsel, in turn, testified at the habeas corpus hearing that Williams entered his plea knowingly and voluntarily and that at the time the plea was entered, she had no doubt that he "understood what was going on." The trial court, in accepting Williams' plea, made a similar determination. See Brady, 397 U.S. at 748.

The only factual finding made by the habeas court remotely related to Williams' ability to understand the consequences of his plea is its finding that Williams suffered from "some low functioning ability." No evidence was presented at the habeas hearing specifically pertaining to Williams'

"functioning ability," however. More importantly, the only evidence of his functioning ability at the time of the plea was that offered through Ms. O'Bannon, demonstrating her belief that Williams made a knowing and voluntary decision to enter his guilty plea. See Petty, 279 Ga. at 276 ("where the evidence the State has produced at a guilty plea hearing establishes the existence of a certain fact, a habeas court cannot discount that fact unless proof to the contrary is adduced at the habeas hearing."). Moreover, even assuming Williams exhibited signs of "low functioning ability," this fact does not lead to the inexorable conclusion that he was incapable of understanding and rationally weighing "the advantages of going to trial against the advantages of pleading guilty." Brady, 397 U.S. at 750-751. And even if it did, the habeas court did not reach this conclusion in its order.

The remaining factors identified by the habeas court in its evaluation of the totality of the circumstances surrounding the entry of Williams' plea similarly do not support the conclusion that his plea was invalidly entered. The State's failure to present the corroborating evidence enumerated in the habeas court's order, while relevant to Williams' evaluation of the strength of the State's case against him, similarly does not support the conclusion that Williams' plea was entered unknowingly. There is no requirement that a trial

judge personally participate in the plea colloquy as long as the trial court makes an independent determination that the plea is voluntarily and intelligently made. See Brady, 397 U.S. at 758 (courts must satisfy themselves that a defendant's guilty plea is voluntarily and intelligently made and that an admission to the charged crime is accurate and reliable); but see State v. Evans, 265 Ga. 332, 335 n. 1 (454 SE2d 468) (1995) (noting that "[e]ven though it is not necessary that trial courts establish the factual basis through a colloquy with the defendant, . . . such a course is the best method for establishing a factual basis" for a guilty plea). And the fact that Williams had no criminal record and his family encouraged him to plead guilty has no bearing in this case on the issue of whether he understood the consequences of his decision. As stated, there is no evidence that Williams was coerced into entering his plea, and the normal pressures and insecurities to which a defendant who finds himself within the criminal process is subjected, whether it be his first or fifth prosecution, are generally insufficient to establish the coercion necessary to invalidate a plea. Finally, there has been no showing that Ms. O'Bannon's appointment as substitute counsel two months before trial left Williams with no choice but to plead guilty. We decline to hold as a matter of law that the appointment of substitute counsel two months before a scheduled trial renders

an otherwise valid guilty plea involuntary, especially where there is no evidence that the arguably belated appointment prejudiced the defendant.

In sum, even giving the proper deference to the habeas court's factual findings and considering the totality of the circumstances surrounding the entry of Williams' plea, Williams failed to meet his burden of proving his plea was not knowingly and voluntarily entered. See Lejeune, 296 Ga. at 294 (holding that habeas petitioner bears the burden of proving that his or her plea was not voluntary, knowing, or intelligent). It follows that he was not entitled to habeas relief on this ground.

2. We likewise find the habeas court erred when it granted habeas relief on the ground that the Fulton County Public Defender's office provided ineffective assistance by failing to provide "consistent representation." Georgia law requires that a habeas petition "clearly set forth the respects in which the petitioner's rights were violated," OCGA § 9-14-44, and that "[a]ll grounds for relief claimed by a habeas petitioner . . . be raised . . . in his original or amended petition." OCGA § 9-14-51. The record here shows that Williams did not, either in his habeas petition or at the habeas hearing, assert a claim of

ineffective assistance of counsel based on "inconsistent representation."[3] The warden, therefore, was given no notice of and had no meaningful opportunity to investigate or respond to the ground on which the habeas court's grant of relief was based. It follows that, despite the general authority of a habeas court "to consider . . . matters sua sponte," the habeas court erred by granting relief to Williams on an unasserted ground. See Williams v. Hall, 286 Ga. 280, 281-282 (687 SE2d 414) (2009); Murrell v. Young, 285 Ga. 182, 183-184 (2) (674 SE2d 890) (2009).

Finding no basis for the grant of habeas relief in this case, the judgment of the habeas court is hereby reversed.

Judgment reversed. All the Justices concur.

---

[3] Although Williams asserted a claim of ineffective assistance of counsel in his petition, his claim was based on allegations that counsel failed to tell him he had a right to withdraw his plea, failed to investigate his claim of a false confession, made false statements to witnesses, and improperly represented both Williams and the district attorney.