NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: May 16, 2023

S23A0264. WARD v. MEDINA.

PETERSON, Presiding Justice.

A habeas court granted relief to Jonathon Medina on the grounds that his guilty plea was involuntary and trial counsel was ineffective. The Commissioner of the Georgia Department of Corrections, Timothy Ward,[1] appeals the habeas court's order, challenging each of those grounds. Because we conclude that the habeas court did not err in granting relief to Medina on his involuntary-plea claim, we affirm the habeas court's decision on that ground without addressing that court's rulings on Medina's ineffective assistance claims.

1. *The record of the underlying proceedings.*

---

[1] The correctional facility that maintains custody of Medina is a private company and the warden of that facility is an employee of that company. Commissioner Ward intervened as a party respondent in the case.

(a) *The plea*

In October 2016, Medina was charged with five counts of armed robbery for one robbery involving five different victims (Counts 1-5), as well as five counts of aggravated assault with a deadly weapon against those victims (Counts 6-10). Medina proceeded to trial in March 2017. Just before the start of trial, the trial court held a hearing on Medina's motion to suppress. When that motion was denied, trial counsel and Medina discussed the possibility of pleading guilty.

After the jury was selected and opening statements were given, Medina informed the trial court that he and the State had entered into a plea agreement in which he would plead guilty to all of the charged counts in exchange for the State withdrawing its recidivism notice.

The trial court and the prosecutor had the following discussion about the sentencing range:

> Prosecutor: As to each Armed Robbery, the maximum is life in prison, with five of them, it's five lifes; 20 years each for Aggravated Assault, there's five of them, that's 100

2

years. So, it's —

Court: It's what or life?

Prosecutor: Ten to twenty, or life.

Court: Ten to twenty, or life.

Prosecutor: Or, one to twenty on the Armed Robberies, which would be — the maximum would be five lifes, plus 100 years.

The prosecutor corrected himself, noting that the stated sentencing range of "one to twenty" referred to the aggravated assault counts. When asked, the prosecutor said that the aggravated assault counts would not merge into the corresponding armed robbery counts. Medina confirmed to the court that he understood that the State was not making a sentencing recommendation and that he would accept the sentence imposed.

The prosecutor then proffered his opening statement as a factual basis for the plea, stating that, although Medina was not present for the actual crime, he planned the robbery of his former employer and selected the assailants who used guns to take property and cash from the business and its employees. Following the factual

proffer, there was a bench conference in which trial counsel said to the court,

> I don't know if you can or would, but [Medina] was just asking me in terms of this being a blind plea, non-negotiated, the State made no recommendation, he wanted some way of gauging —

The court replied, "No, you don't even get to gauge" the trial court's intentions as to sentencing. After a brief exchange about whether counsel could tell Medina anything else about the expected sentence, the prosecutor said, "What I do know is it's not going to be worse than what he'd get at trial. I would assume it would be better." The trial court agreed, saying "I would assume it would be better than what he would get at trial for acceptance of responsibility, if that's, in fact, what he truly does in a moment. I just don't know." Trial counsel said he would convey this information to Medina.

Following the bench conference, there was a lengthy discussion between Medina and trial counsel, after which trial counsel announced that Medina was ready to proceed with a plea. During the plea colloquy, the prosecutor asked Medina questions confirming

4

that he was not under the influence of drugs or alcohol, that he could read and write, that he had read the indictment, and that he did not have any questions about the charges. When the prosecutor asked Medina whether he wanted to plead guilty, Medina said that he needed another five minutes.

The trial court denied Medina's request, stating that Medina just had an extended conversation with counsel, Medina's speedy trial demand had imposed constraints on the court, a jury and witnesses were ready and waiting, and the trial court was unwilling to delay proceedings any further. Medina began to say, "I want to ask my attorney —" before the trial court cut him off and said, "No, sir. No, sir. We're here today. It's your choice." Medina responded, "I'll go ahead." The trial court told Medina, "It's up to you. If you don't want to plea, you don't want to plea." The trial court directed the prosecutor to proceed, and the prosecutor again asked Medina, "Are you deciding to plead guilty?" Medina did not respond.

The trial court found that Medina was delaying and asked Medina to sit so the first witness could be called. The court then said,

"He's indicated he wants to plea, but then he sits there silent and does nothing" and, after again asking Medina to have a seat, said, "He's not responding to lawful commands, either." The court told Medina that he was free at any point to enter a plea, but "standing there mute and not responding" was not merely declining to enter a plea but was "delaying the proceedings."

The court stated that it would proceed with a jury trial since Medina did not show a "clear desire to plea" and directed the jury to be brought in and the prosecutor to call his next witness. After confirming that the prosecutor was ready for the jury, the court asked trial counsel if the defense was ready, and trial counsel said that Medina still wanted to plead guilty. The trial court agreed to continue with the plea hearing and called Medina back to the podium. The prosecutor again asked Medina if he wanted to plead guilty, and Medina answered affirmatively. The prosecutor reviewed the rights Medina would be waiving by pleading guilty and that his guilty plea might adversely affect his probation. The prosecutor again explained to Medina the sentence exposure:

> [T]he maximum possible punishment for the offenses for which you are charged is five lifes, plus 100 years. The minimum possible punishment is ten years in prison, and that is to be served day-for-day, that is the best that could happen to you, and the worst that could happen to you is five lifes, plus 100 years.

The prosecutor asked whether Medina understood this sentencing range and whether he still wanted to plead guilty. Medina answered affirmatively to both questions.

When asked, Medina also confirmed that he understood that the trial court had the discretion to impose any sentence within the discussed range and impose conditions as part of any probation, including that he pay restitution and that he cooperate with law enforcement and testify against his co-defendants. Medina said he would be willing to abide by those conditions.

Medina also said that he had talked to his attorney about his sentencing range, he was satisfied with his attorney's representation, and he did not need any more time to talk to his attorney before entering his plea. Medina repeated that he wanted to enter a guilty plea and admitted his involvement in the crimes.

Later in the hearing, Medina asked for a sentence of 20 years, to serve 10, based on his acceptance of responsibility. The trial court stated that Medina had not accepted responsibility because the judge had to "extract" from him admissions to basic facts about his involvement, he entered the plea only to avoid a mandatory life sentence, his body language suggested he was "irritated" by the process, and he never apologized. The court entered a sentence on all ten counts, imposing a total sentence of 50 years, to serve 30.

(b) *Habeas proceedings*

In 2021, Medina filed the habeas petition in this case. Medina argued that the trial court should have merged his aggravated assault counts (Counts 6-10) with the armed robbery counts (Counts 1-5) because they were part of the same transaction. Medina also argued that his guilty plea was involuntary because (1) the trial court indicated that Medina would likely receive a harsher sentence if he were convicted at trial and (2) the court, the prosecutor, and trial counsel misrepresented his sentencing exposure by over 100 years, as they failed to take into account that the aggravated assault

8

counts merged into the armed robbery counts. Medina also asserted that trial counsel was ineffective on various grounds.

At the habeas hearing, Medina testified that he "remember[ed] the Judge saying something to the order of, you know, if I didn't plead out it would be — it would be — she would assume [his sentence] would be better if I plead out for accepting — for accepting responsibility." Trial counsel testified that, prior to trial, he discussed with Medina the sentencing range for each offense, but could not remember whether they discussed whether the aggravated assault counts would merge with the armed robbery counts. Trial counsel testified that, unless there was something showing that an aggravated assault was a separate, independent act from an armed robbery, he would normally argue that the two offenses merged. Counsel acknowledged that he failed to do so in this case.

Following the hearing, the habeas court granted relief to Medina. In addition to concluding that Medina's aggravated assault counts merged with the armed robbery counts, the habeas court concluded that Medina's plea was involuntary.

9

2. *The Commissioner's claims of error*

The Commissioner does not contest the habeas court's grant of relief as to Medina's merger claim, but argues that no further relief was warranted. As relevant here, the Commissioner argues that neither the trial court's inference that Medina would face a lesser sentence if he pled nor the misstatements about Medina's sentence exposure establish that Medina's guilty plea was not knowingly and voluntarily entered. The Commissioner addresses the factors separately, but the habeas court considered these factors together, concluding that Medina's guilty plea was not knowingly and voluntarily entered when he faced "an inflated maximum sentencing exposure *and* the presiding judge's inference that he would receive more favorable treatment by entering the plea." We see no error in the habeas court's conclusion that these two circumstances together rendered Medina's guilty plea involuntary, so we affirm.

"In reviewing the grant or denial of a petition for habeas corpus, this Court accepts the habeas court's factual findings and credibility determinations unless they are clearly erroneous, but we

independently apply the law to the facts." *Dozier v. Watson*, 305 Ga. 629, 629-630 (827 SE2d 276) (2019). To be entitled to habeas relief, a petitioner has the burden of showing that his constitutional rights — either under the United States or Georgia Constitutions — were violated. See, e.g., *Kennedy v. Hines*, 305 Ga. 7, 9 (2) (823 SE2d 306) (2019); *Holt v. Ebinger*, 303 Ga. 804, 807 (814 SE2d 298) (2018). And a guilty plea may be set aside as constitutionally invalid if the petitioner can show that it was not knowingly or voluntarily made. See *Kennedy*, 305 Ga. at 9 (2).

Determining whether a plea was validly entered requires a consideration of "all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. 742, 749 (90 SCt 1463, 25 LE2d 747) (1970); see also *Shepard v. Williams*, 299 Ga. 437, 439 (1) (788 SE2d 428) (2016) (concluding that the habeas court correctly considered the totality of the circumstances in evaluating validity of guilty plea).[2] The focus of any inquiry into the validity of a guilty

---

[2] Because a court must consider the totality of the circumstances, there is no merit to the Commissioner's argument that the habeas court erred in

plea is "to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Shepard*, 299 Ga. at 439 (1) (citation and punctuation omitted).

A guilty plea may be invalid when it is induced by threats, misrepresentations, or improper promises. See *Brady*, 397 U.S. at 755; see also *Machibroda v. United States*, 368 U.S. 487, 493 (82 SCt 510, 7 LE2d 473) (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). A guilty plea is invalid if a trial court threatens a defendant, either explicitly or implicitly, "that his sentence *will* be harsher if he rejects a plea deal and is found guilty at trial." *Kennedy*, 305 Ga. at 9-10 (2) (emphasis in original) (citation and punctuation omitted). But if a trial court merely advises a defendant that his "sentence *may* be harsher" if he goes to trial, the statement does not necessarily constitute a threat and so does not, without more, render a plea

considering multiple circumstances in determining the voluntariness of Medina's plea.

involuntary. Id. at 10 (2) (emphasis in original) (citation and punctuation omitted).

Consistent with United States Supreme Court precedent, we have concluded that certain guilty pleas are involuntary when they were induced by affirmative misrepresentations. See, e.g., *State v. Patel,* 280 Ga. 181, 183 (626 SE2d 121) (2006) (affirming habeas court's order permitting defendant to withdraw guilty plea where defendant entered a nolo contendere plea based on trial counsel's affirmative misrepresentations that such a plea would not have collateral consequences on defendant's ability to participate in federal health programs); *Petty v. Smith*, 279 Ga. 273, 274-277 (612 SE2d 276) (2005) (defendant's guilty plea to both felony murder and aggravated assault based on same conduct was involuntary where it was induced by trial counsel's "giving of misleading advice through the failure to do basic research" that would have discovered the aggravated assault count merged and this prejudiced defendant because he received a sentence on a count that could not have been legally imposed had he proceeded to trial and been convicted);

13

*Rollins v. State*, 277 Ga. 488 (591 SE2d 796) (2004) (holding that habeas petitioner was entitled to withdraw guilty plea where trial counsel affirmatively misled defendant that First Offender Act guilty plea would not negatively impact her immigration status or her ability to become an attorney); *Gay v. State*, 342 Ga. App. 242, 244-245 (803 SE2d 113) (2017) (holding that defendant's non-negotiated guilty plea was involuntary where trial court's affirmative misstatement about sentencing range for armed robbery gave defendant the impression that the court was not inclined to sentence him to life imprisonment, which it did). But where the defendant fails to show that he pleaded guilty on account of a misrepresentation, his guilty plea is valid. See *Gomez v. State*, 300 Ga. 571, 573 (797 SE2d 478) (2017) (defendant failed to show that he would not have pleaded guilty had he known he would have had to serve 42 years in prison before being eligible for parole, rather than "30 years or so" as explained by trial counsel, where the court was entitled to discredit his testimony in this respect and the record showed defendant was aware he was "facing a maximum sentence

of life *without any possibility of parole*" if convicted at trial (emphasis in original)).

As stated above, when considering a habeas court's grant or denial of habeas relief, we review that court's factual findings for clear error and independently apply the law to the facts. This is not a novel proposition, for we have used a similar standard of review when evaluating determinations about whether a defendant's constitutional rights have been violated. See, e.g., *Torres v. State*, 314 Ga. 838, 848 (2) (e) (ii) (878 SE2d 453) (2022) (in determining voluntariness of as a matter of constitutional due process, "we accept the trial court's finding[s] on disputed facts and credibility of witnesses unless clearly erroneous but independently apply the law to the facts," but "[w]here controlling facts are not in dispute . . . our review is de novo." (citation omitted)); *Sullivan v. State*, 308 Ga. 508, 510-511 (2) (842 SE2d 5) (2020) ("Ineffectiveness claims involve mixed questions of law and fact, and a trial court's factual findings made in the course of deciding an ineffective assistance of counsel claim will be affirmed by the reviewing court unless clearly

erroneous, whereas conclusions of law based on those facts are reviewed de novo." (citations and punctuation omitted)). Of course, although questions of constitutional guarantees are guided by legal principles for which a de novo standard is applied, these questions are often dependent on factual predicates that can (and should) be decided only by lower courts (and not appellate courts) after evidentiary development. See, e.g. *Oubre v. Woldemichael*, 301 Ga. 299, 307 (2) (b) (800 SE2d 518) (2017), disapproved of on other grounds by *Clark v. State*, 315 Ga. 423 (883 SE2d 317) (2023) (remanding to the habeas court to analyze in the first instance and consider "particular factual questions" whether defendant's statement to co-defendant was the result of police coercion, because "coercive police activity is a necessary predicate to a finding that a confession is involuntary within the meaning of the due process clause of the Fourteenth Amendment,"); *State v. Allen*, 298 Ga. 1, 4 (2) (779 SE2d 248) (2015) ("A trial court's conclusion that a traffic stop was unreasonably prolonged may often be a fact-intensive determination, but it is ultimately a holding of constitutional law

16

that we review de novo."); see also *United States v. Shamsid-Deen*, 61 F4th 935, 945 (11th Cir. 2023) (noting federal appellate precedent from variety of cases, including federal habeas petitions, that legal conclusions are reviewed de novo and factual findings for clear error, and that the Eleventh Circuit has "consistently held that" a district court's decision regarding the validity of a waiver of a constitutional right, which presents a mixed question of law and fact, is subject to de novo review). As relevant here, the habeas court's conclusion about voluntariness was based on a factual predicate that the plea was induced by affirmative misstatements — and, in other contexts considering the voluntariness of a defendant's action, we have reviewed conclusions about improper inducement for clear error. See, e.g., *Leonard v. State*, 292 Ga. 214, 215 (2) (735 SE2d 767) (2012) (trial court's determination that defendant's custodial statement was freely and voluntarily given and not induced by the "hope of a light sentence" was not clearly erroneous); *Amadeo v. State*, 243 Ga. 627, 628 (1) (255 SE2d 718) (1979) (noting that whether defendant's statement was induced by hope of benefit was

17

a "close question" and concluding that trial court's resolution of the issue was not clearly erroneous).

Here, the totality of the circumstances supports the habeas court's findings and conclusion that Medina's plea was involuntary. Medina's plea did not include an agreement as to a recommended sentence, and Medina was repeatedly told that the trial court could sentence him to the maximum sentence for each offense. The trial court also conveyed to Medina, through his counsel, that the court "assumed" Medina would receive a lighter sentence if he pleaded guilty and accepted responsibility than if he were convicted at trial. By itself, this would not have rendered Medina's plea involuntary, because the statement, at most, indicated that Medina's sentence *might* be harsher if he went to trial. See *Kennedy*, 305 Ga. at 9-10 (2). But this comment by the trial court, when viewed along with the fact that Medina was affirmatively misled about the maximum sentence he faced, precludes us from second-guessing the habeas court's conclusions. Not only was Medina informed that he likely would face a harsher sentence if he were convicted at trial, he was

18

told that sentence potentially could be multiple life sentences, plus 100 years — 100 years more than he in fact faced, given that the aggravated assault counts should have merged into the armed robbery counts. See *Long v. State*, 287 Ga. 886, 889 (2) (700 SE2d 399) (2010) (convictions for aggravated assault with a deadly weapon merged with armed robbery counts when part of same transaction).

The Commissioner does not challenge the fact that Medina was misadvised about his sentence exposure. Indeed, the Commissioner does not even challenge the habeas court's conclusion that the aggravated assault counts should have merged. Instead, the Commissioner suggests on appeal that this significant misrepresentation was somehow mitigated by the fact that it occurred before the factual basis for the guilty plea was established.[3]

---

[3] In his appellate brief, the Commissioner suggests that it was unclear whether the aggravated assault counts would merge because the factual basis had not been established. But the guilty plea colloquy was conducted after opening statements had already been given. By this point, the prosecutor was well aware of what the evidence would establish at trial; indeed, the prosecutor's opening statement was proffered as the factual basis for the plea.

But the record does not bear that out; and in any case, the error was never corrected. The record shows that the State initially misstated the maximum sentence before proffering a factual basis, and then there was much discussion about Medina wanting to know if he could "gauge" or get a sense of the sentence the court would impose. After learning that he could not get such an indication, Medina became unresponsive to the trial court's instructions, leading the court to believe that Medina was not expressing a "clear desire to plea." When the trial court began to bring the jury in to proceed with the trial, Medina said he wanted to plead guilty, at which point the prosecutor again misadvised Medina about the maximum sentence, stating

> [T]he maximum possible punishment for the offenses for which you are charged is five lifes, plus 100 years. The minimum possible punishment is ten years in prison, and that is to be served day-for-day, that is the best that could happen to you, and the worst that could happen to you is five lifes, plus 100 years.

The Commissioner does not assert that these misrepresentations were ever corrected. The Commissioner

20

correctly points out that the habeas court did find that trial counsel and Medina discussed the sentencing ranges for armed robbery and aggravated assault. But the habeas court also found that trial counsel did not have any recollection of discussing whether the aggravated assault counts merged. Simply put, Medina was wrongly told that he faced the prospect of five life sentences plus an additional 100 years if convicted at trial, and was never told otherwise.

The habeas court concluded that these misrepresentations (combined with the trial court's statement noted above) induced Medina into pleading guilty, and that finding is not clearly erroneous. The habeas court found, and the plea colloquy shows, that Medina was hesitant to admit guilt and was very concerned about the sentence he could receive. The trial court even found that Medina did not express a clear desire to plead guilty based on his uncooperative attitude and attempt to delay the proceedings. The plea colloquy further shows that Medina was more clear in his desire to plead guilty, and no longer delayed the plea proceedings, only

21

after hearing the prosecutor misstate Medina's sentence exposure for a second time, saying that the best sentence he could receive was "ten years in prison . . . to be served day-for-day" while the worst sentence was "five lifes, plus 100 years." Given this evidence, we cannot say that the habeas court's conclusion — that the sentencing exposure misstatements (combined with the trial court's statement that going to trial would likely result in a more severe punishment) induced Medina to plead guilty — was clearly erroneous. See *Upton v. Johnson*, 282 Ga. 600, 602 (652 SE2d 516) (2007) ("When there is evidence to support the habeas corpus court's factual findings, those findings cannot be found to be clearly erroneous."). The precedent discussed above, and especially *Petty*, 279 Ga. at 274-277, supports the habeas court's conclusion that the guilty plea was involuntary. We therefore affirm.

*Judgment affirmed. All the Justices concur.*